**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KEREESE JOHNSON**,

Plaintiff,

v.

**GLOBAL EQUIPMENT COMPANY, INC.,**
*individually and d/b/a "GLOBAL INDUSTRIAL,"* **and DONAVAN BARNES**, *individually*,

Defendants.

Civil Action No. 24-08789 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Donavan Barnes ("Barnes" or "Defendant"). (ECF No. 22.) Defendant filed a brief in support. ("Moving Br.", ECF No. 22-2.) Plaintiff Kereese Johnson ("Plaintiff") filed a brief in opposition, ("Opp'n Br.", ECF No. 23) and Defendant filed a reply ("Reply Br.", ECF No. 24.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Defendant's Motion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

This is an employment harassment and discrimination case. Plaintiff was hired by Defendant Global Equipment Company, Inc. ("Global Industrial") on or about December 16,

1

2021.[1] (Am. Compl. ¶ 20.) From December 2021 to December 2022, Plaintiff worked as a Human Resources ("HR") Generalist at Global Industrial's warehouse in Robbinsville Township, New Jersey. (*Id.* ¶¶ 12, 20, 66–67.)

### A.     Defendant's Interactions with Plaintiff

At the beginning of her employment, Plaintiff was introduced to Defendant. (*Id.* ¶ 21.) HR employees told Plaintiff that Defendant was "the Warehouse Manager," and "the one running the show." (*Id.*) Throughout her employment with Global Industrial, Defendant met with Plaintiff to discuss and instruct Plaintiff as to how she was to perform her job duties. (*Id.* ¶ 29.) Defendant hosted "lunch and learn" meetings with Plaintiff during which he instructed Plaintiff on how to inform other employees about benefits and company policies. (*Id.* ¶ 30.) Defendant referred to himself as "the boss" and told Plaintiff that he "run[s] stuff" at the warehouse. (*Id.* ¶¶ 44–45.)

Plaintiff claims that Defendant "teased" her in front of other employees and repeatedly made comments about Plaintiff's general appearance. (*Id.* ¶¶ 22–23.) Defendant's "teasing" escalated to sexual harassment after a June 2022 lunch, during which Defendant implied that Plaintiff "needed to get some 'D'" and that Plaintiff should submit to Defendant's sexual advances. (*Id.* ¶¶ 31–36.) From that point on, Defendant made inappropriate, crude, and unwanted sexual comments toward Plaintiff each time the two were alone at work. (*Id.* ¶¶ 38, 39–45, 54–65.) Defendant's comments made Plaintiff "extremely uncomfortable" and Plaintiff often "clos[ed] her office door specifically to avoid Defendant." (*Id.* ¶¶ 48–49.)

### B.     Plaintiff's Employment Status

In or around February 2022, HR informed Plaintiff of the company's intent to make Plaintiff a full-time employee. (*Id.* ¶ 24.) In May 2022, HR "apologized that the transition to full-

---

[1] For the purposes of this Motion, the Court assumes as true the facts alleged in the Amended Complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

time employ[ment] was taking longer than promised." To compensate for the delay, Plaintiff was awarded a bonus. (*Id.* ¶¶ 27–28.)

In July 2022, HR told Plaintiff that she would be made a full-time employee after the new budget was created in September. (*Id.* ¶ 51.) A few months later, in September 2022, HR informed Plaintiff that Defendant, as well as an HR Senior Vice President, "had the final say as to when Plaintiff would be made a full-time employee." (*Id.* ¶ 52.)

Because Defendant's alleged sexual harassment began during Plaintiff's transition to full-time employment, Plaintiff was "fearful that if she escalated her complaints, her job would be in jeopardy." (*Id.* ¶ 46–47.) When Plaintiff expressed concern about how long the transition was taking, HR told her that the department was awaiting Defendant's response as to whether he "wanted her on the team." (*Id.* ¶ 53.)

In a December 2022 meeting, HR informed Plaintiff that Defendant requested Plaintiff be terminated, as he "d[id] not have any use for [Plaintiff]." (*Id.* ¶¶ 67–68.) Plaintiff was thereafter terminated in December 2022.

### C. Procedural History

On August 27, 2024, Plaintiff filed her initial Complaint against Defendant Global Industrial and Defendant Barnes. (ECF No. 1.) Defendant filed his first Motion to Dismiss on November 13, 2024. (ECF No. 10.) The Court ordered Plaintiff to file a pre-motion letter in response to Defendant's first Motion to Dismiss. (ECF No. 12.) Plaintiff filed a letter with the Court expressing her intent to file the Amended Complaint, prompting the Court to administratively terminate Defendant's first Motion to Dismiss. (ECF No. 13, 14.)

The Amended Complaint was thereafter filed on December 4, 2024. (ECF No. 15.) In it, Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, *et seq.* against Global Industrial, claims for discrimination and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* against all Defendants, and a separate aiding and abetting cause of action against Defendant Barnes.

Defendant submitted his second Motion to Dismiss on February 21, 2024. (ECF No. 22.)

## II.    SUBJECT MATTER JURISDICTION

The Court exercises federal question jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her remaining claims pursuant to 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   DISCUSSION

In the Amended Complaint, Plaintiff asserts several causes of action for violations of the NJLAD against all Defendants. As relevant here, Plaintiff brings discrimination, retaliation, and harassment claims based on Plaintiff's sex.

Defendant Barnes moves to dismiss each of Plaintiff's NJLAD claims asserted against him in his individual capacity, arguing that Plaintiff failed to state a valid claim. Specifically, Defendant asserts that Plaintiff's NJLAD claims against him must be dismissed because Plaintiff cannot bring a claim against Defendant individually for "aiding and abetting" his own harassing conduct as a matter of law. (*See* Moving Br. at 4, 6–12.)

Generally, the NJLAD provides for individual liability of a supervisory employee where a plaintiff proves that the employee "aided and abetted" the employer's illegal conduct. *See N.J.S.A.* § 10:5-12(e); *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 593, 947 A.2d 626 (2008) ("[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism" in the NJLAD.) (citations omitted). To establish an aiding and abetting claim, a plaintiff must show that the individual defendant: (1) aided the party performing a wrongful act that causes an injury; (2) was generally aware of his role as part of an overall illegal or tortious activity at the time he provided the assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti*, 194

N.J. at 594, 947 A.2d 626 (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921 (2004)). Whether the defendant provided "substantial assistance" is determined using five factors: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) whether the defendant was present at the time of the alleged harassment; (4) the defendant's relations to the others; and (5) the state of mind of the defendant. *Tarr*, 181 N.J. at 84 (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 n.27 (3d Cir. 1999); Restatement (Second) of Torts, § 876(b) cmt. d).

An individual supervisor, however, can also be held liable under the NJLAD for his own wrongful conduct based on an "aiding and abetting" theory under *N.J.S.A.* § 10:5-12(e). *See DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) ("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct. That implies the availability of personal liability for a violation of the NJLAD.") (citations omitted). Admittedly, "[t]his is a somewhat awkward theory of liability." *Hurley*, 174 F.3d at 126. However, as the Third Circuit explained even prior to *Rowan*, "[a] supervisor, under New Jersey law, has a duty to act against harassment. This duty can be violated by deliberate indifference or affirmatively harassing acts. When a supervisor flouts this duty, he subjects himself and his employer to liability." *Id.* (internal citations omitted).

In his brief, Defendant contends that the opposite is true—that an individual supervisor cannot aid and abet his own conduct. This contention is incorrect. Contrary to Defendant's position, courts both in this district and New Jersey state courts have held that individually named defendants can be held personally liable for their own conduct under the aiding and abetting provision of the NJLAD. *See Rowan v. Hartford Plaza Ltd., LP*, App. No. 0107-11T3, 2013 WL 1350095, at *8 (N.J. Super Ct. App. Div. Apr. 5, 2013) ("[A]ny suggestion that *N.J.S.A.* 10:5-12(e) permits individual liability for a supervisor who encourages or facilitates another employee's

6

harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct, appears to us to be untenable."); *Ivan*, 595 F. Supp. 2d at 462 ("The [NJLAD] does not impose individual liability upon non-supervisory employees, but a supervisor may be liable for aiding and abetting his or her own conduct.") (citing *Hurley*, 174 F.3d at 126); *see also Thorbourne v. Public Serv. Enter. Grp.*, Civ. No. 15-3477, 2016 WL 270908 (D.N.J. Jan. 22, 2016).

Defendant argues that the New Jersey Appellate Division's opinion in *Rowan* was mere "judicial activism." (*See* Moving Br. at 9 n.6.) While this Court is not bound to follow *Rowan*, the Court does find it persuasive. *Rowan* is the only Appellate Division decision that squarely addresses this issue and has been affirmatively relied upon by numerous courts in this district. *See Miller v. Goldcrest Prop., LLC*, Civ. No. 22-4777, 2023 WL 414628, at *3 n.2 (D.N.J. June 23, 2023); *Kasten v. Shaan Enter., Inc.*, Civ. No. 17-3262, 2021 WL 753909, at *10 (D.N.J. Feb. 26, 2021); *Deresky v. B.J. McGlone & Co., Inc.*, Civ. No. 14-1930, 2018 WL 3425731, at *9–10 (D.N.J. July 16, 2018); *Marino v. Westfield Bd. of Educ.*, Civ. No. 16-361, 2016 WL 2901706, at *9–10 (D.N.J. May 18, 2016); *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467–68 (D.N.J. 2016); *Brown-Marshall v. Roche Diagnostic Corp.*, Civ. No. 10-5984, 2013 WL 3793622, at *7 (D.N.J. July 19, 2013); *Godfrey v. Thermco*, Civ. No. 13-4750, 2013 WL 5952046 at *5–6 (D.N.J. Nov. 4, 2013); *Vazquez v. Karcher North Am.*, Civ. No. 13-3817, 2013 WL 5644295 (D.N.J. Sept. 23, 2013). *But see Barker v. United Airlines, Inc.*, Civ. No. 23-3065, 2024 WL 378633 at *3–4 (D.N.J. Feb. 1, 2024) (silent as to *Rowan*); *Putterman v. Weight Watchers Intern., Inc.*, Civ. No.

10-1687, 2010 WL 3310706 (D.N.J. Aug. 19, 2010) (decided pre-*Rowan*); *Burga v. UniFirst Corp.*, App. No. 2963-22, 2025 WL 2387761 (N.J. Super. Ct. App. Div. Aug. 18, 2025).[2]

As the Appellate Division observed, it would lead to a perverse result if a supervisor could be liable for aiding and abetting another employee but completely escape liability for his own, independent wrongful conduct. Because the NJLAD is a remedial statute, it is to be interpreted liberally to reach the prohibited conduct of workplace discrimination. *Rowan*, 2013 WL 1350095, at *8. Accordingly, this Court reaches the same conclusion in *Rowan*—and the same conclusion that has been reached in numerous cases within this district—that Defendant, as a supervisor, can be held individually liable for his own conduct pursuant to the aiding and abetting provision of the NJLAD.

Here, the Amended Complaint has adequately pled all that is required to sustain gender- and sex-based NJLAD claims against Defendant. Although Defendant disputes whether Barnes was in fact Plaintiff's supervisor (*see* Moving Br. at 7 n.4), Plaintiff adequately alleges otherwise. In the Amended Complaint, Plaintiff asserts that Defendant met with her to discuss how she was to perform her job duties. (Am. Compl. ¶ 29.) Defendant allegedly hosted "lunch and learn" meetings with Plaintiff during which he instructed Plaintiff how to inform other employees about benefits and company policies. (*Id.* ¶ 30.) Additionally, HR employees told Plaintiff that Defendant was "the Warehouse Manager" and "the one running the show." (*Id.* ¶ 21.) Defendant referred to himself as "the boss" and told Plaintiff that he "run[s] stuff" at the warehouse. (*Id.*

---

[2] This Court acknowledges the recent unpublished Appellate Division opinion in *Burga v. UniFirst Corp.*, App. No. 2963-22, 2025 WL 2387761 (N.J. Super. Ct. App. Div. Aug. 18, 2025). In that case, another Appellate Division panel does not specifically discuss *Rowan* but rather states that New Jersey courts "have not settled the question of whether an individual employee can be subjected to aiding and abetting liability for his own conduct" in any *precedential* opinions. *Id.* at *10 (emphasis added). Declining to decide what it considered to be a novel question, the Appellate Division directed the trial court to address the issue of individual liability on remand. *Id.* The Court expects the parties to update it regarding any relevant developments in state court.

¶¶ 44–45.) Defendant also possessed the final say as to whether Plaintiff was hired full-time at Global Industrial. (*Id.* ¶ 52.) These allegations sufficiently support Plaintiff's claim that Defendant was her supervisor.

Plaintiff also adequately alleges that Defendant performed wrongful acts and, as the wrongdoer himself, was clearly aware of his role in illegal activities. Moreover, the Amended Complaint plausibly alleges that he is liable, insofar as Plaintiff alleges that Defendant himself engaged in conduct that violated the NJLAD while he was in a position of relative authority over Plaintiff. Defendant subjected Plaintiff to a series of sexual advances over the course of her employment with Global Industrial. (*Id.* ¶¶ 30–33, 36–42, 47, 51–61, 63–65.) When Plaintiff rejected Defendant's advances, Defendant authorized Global Industrial to terminate her. (*Id.* ¶¶ 63–65.) Put succinctly, the Amended Complaint adequately alleges that Defendant "flout[ed] his duty to act against harassment," thereby "subject[ing] himself and [Global Industrial] to liability" under the NJLAD. *See Ivan*, 595 F. Supp. 2d at 462 n.7.

## V.    CONCLUSION

For the reasons stated above, the Court will **DENY** Defendant Barnes's Motion to Dismiss (ECF No. 22.) An appropriate Order will follow.

Date: September 17, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
